## Knauss's Estate.   Durn's Appeal.

[Marked to be reported.]

*Decedent's estate—Parent and child—Claim for services—Recognition of claim in will.*

A testator provided by his will that one of his daughters should receive a portion of his estate, less the amount due testator by her husband, " and also the amount claimed, or may be claimed by her, or them, as wages coming from her work and labor done over and above the age of twenty-one years, may be added to her portion whenever the same may be recovered against the estate by due course of law : "

*Held*, 1. That the language of the will was a recognition of a valid claim on the part of the daughter for compensation, and that no further proof of a contract relation was necessary.

2. That the presentation of the claim in the orphans' court, and its adjudication therein, constituted a recovery " by due course of law."

3. The gift to the daughter was a legacy, the amount of which was to be ascertained by a judicial proceeding.

4. That claimant was not entitled to interest during the lifetime of testator, but was entitled to interest beginning one year from the date of testator's death.

Argued March 8, 1892.   Appeal, No. 82, July T., 1891, by Amy C. Durn, from decree of O. C. Northampton Co., sustaining exceptions to auditor's report, in estate of Owen Knauss, deceased.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Claim for services rendered to decedent, of whom claimant was a daughter.

Before the auditor, Henry D. Maxwell, Esq., appellant presented a claim for services under testator's will, to the amount of $2.25 per week from February 23, 1864, to June 28, 1868, with interest on the amounts due at the end of each year.   The auditor found that the services rendered consisted in claimant's performing the general housework of the family, in which she was assisted at times by her mother and sister ; in addition to which, during the summer months, when occasion required, she would assist at haymaking, corn husking, threshing, etc. For these services the auditor found that $1.75 per week would be a just compensation.

He found also that there was no contract, nor was any con-

tract alleged, between appellant and her father, but on the authority of Sinclair's Appeal, 116 Pa. 316, that the provisions of the testator's will (which are set out in the opinion of the Supreme Court) amounted to a legacy to his daughter, of such an amount as should be properly and legally established as a fair and just compensation for the services performed; that as a legacy, the amount found to be due bore no interest during testator's lifetime, but on the authority of Eyre v. Golding, 5 Binn. 475; Bitzer's Executors v. Hahn, 14 S. & R. 232; Hilyard's Est., 5 W. & S. 31; Koons & Wright's Ap., 113 Pa. 621, that interest began to run one year from testator's death.

Exceptions to the auditor's report filed by the other legatees, children of testator, were:

1. The auditor erred in his construction of that clause of the will of Owen Knauss, deceased, by which he gave " to my daughter Emma Catharine, intermarried to Milton Durn, the one sixth part (of his estate) less the amount due me by her husband, Milton Durn (judgment note of $400) and also the amount claimed, or may be claimed by her or them, as wages coming to her for work and labor done over and above the age of twenty-one years may be added to her portion whenever the same may be recovered against the estate by due course of law," on holding that the said Emma Catharine Durn under the terms of the said clause, viz.: " Whenever the same may be recovered against the estate by ' due course of law,' " was not required to prove and establish an express contract of hiring and promises by Owen Knauss, her father, to pay for the service to be rendered by her. [1]

2. The auditor erred in allowing and awarding to Emma Catharine Durn the sum of $390.75 for wages and the further sum of $76.55 interest on the same from January 9, 1888, to April 6, 1891, amounting altogether to $470.30. [2]

Exception filed by claimant was:

The auditor erred in not allowing interest upon the claim of Emma Catharine Durn from the time the services were rendered down to the time of filing his report. [3]

The exceptions to the allowance of the claim were sustained by the court below in an opinion by SCHUYLER, P. J. Claimant appealed.

*Errors assigned* were (1, 2) sustaining appellee's first and

second exceptions, quoting them ; (3) not sustaining appellant's exception, quoting it.

*H. J. Steele,* for appellant.—A testamentary paper should be construed according to its nature and ordinary import: Hunter's Est., 6 Pa. 106 ; Biddle's Ap., 99 Pa. 532. This principle, however, the court below disregarded, and based its decision upon a strict construction of the phrase " due course of law," regardless of the antecedent language, or the general scope and purpose of the will.

The will under consideration is similar to that in Sinclair's Appeal, 116 Pa. 316.

While technical words are prima facie to be taken in their strict sense, they will not be so construed as to defeat any obvious general intention, particularly where, as here, it is evident that the will was prepared by a person unacquainted with the precise technical force of legal terms and formulas: Raudenbach's Ap., 87 Pa. 51 ; Wright's Ap., 89 Pa. 67 ; Thompson's Ap., 39 Leg. Int. 328 ; Jacobs' Est., 140 Pa. 274 ; Graham v. Knowles, 140 Pa. 333 ; Sheetz's Ap., 82 Pa. 213.

" The phrase 'due course of law' does not necessarily imply a trial by jury, but rather means a proceeding carried on according to the law of the land : " Reagh v. Spann, 3 Stew. (Ala.) 108 ; Backus v. Shepherd, 11 Wend. 635 ; 6 Am. & Eng. Ency. of Law, 50.

" Due course of law " in Pennsylvania for distributing the estates of decedents is applicable to the orphans' court : Dundas's Ap., 73 Pa. 474 ; Reber's Ap., 125 Pa. 20.

Geisinger's Ap., 1 Monag. 600, and Hancock's Ap., 112 Pa. 532, relied upon by the court below, " never intended to say that the testator's meaning, when apparent, can be disregarded, but that it cannot be got at aliunde by what he might have meant, or even what, under the circumstances, perhaps he would have meant, but only by what he said. The search is confined to his language, but its object is still his meaning." MITCHELL, J., in Woelpper's Ap., 126 Pa. 572.

*O. H. Meyers,* for appellee.—The sole question to be determined is whether, when the testator provided that his daughter should receive the amount claimed as wages " whenever the same may be recovered against the estate by due course of law,"

the words which he used shall be given their proper force and effect. The principle is that not the testator's intention, but his *expressed* intention, is to govern: Reck's Ap., 78 Pa. 432; Weidman's Ap., 42 Leg. Int. 338; Hancock's Ap., 112 Pa. 532. This rule is not relaxed by Woelpper's Ap., 126 Pa. 572.

"Technical words, or words of known legal import, shall have their legal effect, unless from subsequent inconsistent words it is very clear that the testator meant otherwise:" 2 Williams on Executors, 973; Carroll v. Burns, 108 Pa. 386; Porter's Ap., 94 Pa. 332; Doebler's Ap., 64 Pa. 15; Brisben's Ap., 70 Pa. 405; Frances' Ap., 75 Pa. 225; Bainbridge's Ap., 97 Pa. 482; Huber's Ap., 80 Pa. 348.

As to the meaning of the condition "whenever the same may be recovered against the estate by due course of law:" Willing v. Peters, 12 S. & R. 179; 2 Bouvier Law Dict. 431; 6 Ency. of Law, 40, 43; Menges v. Dentler, 33 Pa. 498; Brown v. Hummel, 6 Pa. 91; Huber v. Reily, 53 Pa. 117; People v. Supervisors, 74 N. Y. 234.

Testator made no absolute bequest to his daughter of anything which was morally due or legally due in the absence of an express contract, but only upon the express condition, " whenever the same may be recovered against the estate by due course of law." Before she can receive it the condition must be performed: 2 Jarman on Wills, 505; Rapp v. Eberly, 79 Pa. 141; Parker v. Tootal, 11 H. L. C. 143; Still v. Spear, 45 Pa. 168; Campbell v. McDonald, 10 Watts, 179; Buehler's Heirs v. Buffington, 43 Pa. 279.

As to the question of interest, none should have been allowed, since the gift is simply limited to the *wages* which may be recovered by due course of law. Since these wages will never be determined until the litigation is concluded, no interest can ever arise: Brown's Ap., 86 Pa. 524.

OPINION BY MR. CHIEF JUSTICE PAXSON, March 28, 1892:

This contention arises upon the will of Owen Knauss, deceased. The testator after providing for the payment of his just debts and funeral expenses, and making provision for his wife, Catharine, directs his executors to sell the residue of his estate, and divide the same into six equal parts or shares. He then proceeds: "To my daughter, Emma Catharine, intermar-

ried to Milton Durn, the one-sixth part thereof, less the amount due me by her husband, Milton Durn (judgment note of $400), and, also, the amount claimed or may be claimed by her or them, as wages coming from her work and labor done, over and above the age of twenty-one years, may be added to her portion whenever the same may be recovered against the estate by due course of law. And I do order, and it is my will, that the said judgment note of $400, and the interest due thereon, shall be deducted from her share coming to her, also the balance paid by me on the John J. Woodring's note, as security, dated Feb. 16, 1877, amounting to $32, together with the interest due thereon; and, also, the book account which I hold against her husband, Milton Durn, amounting to $93.63½, and the balance, after all said amounts be deducted from her share, to be paid to her by my said executors, and no more."

The appellant claimed, before the auditor, for over four years services rendered her father after she was of age, at the rate of $2.25 per week. The auditor allowed her at the rate of $1.75 per week for the entire time, and awarded her the sum of $470.50. An exception having been filed in the orphans' court to this claim, the learned judge below sustained said exception, upon the ground that the appellant could not have recovered " by due course of law " because there was no contract to pay for her services.

A considerable amount of learning has been wasted in this case, in defining what is " due course of law." It is sufficient to say, for the purposes of this case, that the presentation of the claim to the orphans' court, and its adjudication by that court, is " due course of law." It may be conceded that, had there been no reference to this claim in the will, it could not have been recovered in the orphans' court, nor by a suit at law. There was no evidence, outside of the will itself, of a contract between the appellant and her father, that she was to be paid for her services. We regard the will, however, as a distinct recognition of such contract, and that she had performed the work and labor under it. But there was no recognition of the amount she was to be paid. Hence, the testator provided that her portion of the estate should be increased by whatever may be recovered against the estate by " due course of law." In other words, her legacy was increased by that amount. Any

other construction of the will renders it insensible in this respect. It is inconceivable that the testator would have recognized this claim, and have directed its payment, unless he considered that the appellant had a valid claim for some amount. Just what amount was due he left to be determined by due process of law. This was his obvious meaning. The case is somewhat analogous to Sinclair' Ap., 116 Pa. 316. There a testator in his will, made in 1885, provided: "It is my will, and I do order, that the balance due my old creditors, whose claims were compromised, be paid in full." He had failed in 1877, and in 1883 had made a compromise with his creditors. It was held that, under this provision, the creditors were entitled to be paid their original claims, with interest, treating the composition payments as partial payments at date when made. Justice CLARK there said: " When the testator directed that ' the balance due his old creditors, whose claims were compromised,' should be paid, he, of course, did not mean the balance which was legally due to them, for that would give the provision no effect whatever. He meant that his executors should pay to them the balance which was justly due and ought to be paid to them respectively, although there was no legal obligation resting upon him for payment thereof, either debt or interest. It is a legacy, the amount of which, however, is to be computed upon the footing of his previous claims."

We do not regard Geisinger's Ap., 1 Mona. 600, and Hancock's Ap., 112 Pa. 532, as applicable to the facts of this case. The gift to the appellant was a legacy, the amount of which was to be ascertained by a judicial proceeding.

The decree is reversed at the costs of the appellees; the report of the auditor is affirmed, and it is ordered that distribution be made in accordance therewith.